Case 1:21-cv-00124   Document 38   Filed on 08/16/22 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
August 16, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROBERTO ROSALES, JR., | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:21-cv-124 |
| | § | CRIM. ACTION NO. 1:18-621-1 |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On August 16, 2021, Petitioner Roberto Rosales, Jr. filed a motion to vacate, set aside or correct his sentence pursuant to 42 U.S.C. § 2255. Dkt. No. 1.

On May 17, 2022, the Court held an evidentiary hearing on the petition. Dkt. No. 28. Rosales and the Government have filed post-hearing briefs. Dkt. Nos. 34, 37.

After reviewing the facts and the relevant case law, the Court recommends that the petition be denied. Rosales's petition is substantively meritless.

## I. Background

### A. Factual Background

#### 1. Indictment & Guilty Plea

On August 21, 2018, the grand jury indicted Rosales and a co-defendant with (1) conspiracy to possess with the intent to distribute heroin; (2) possession with the intent to distribute heroin; (3) conspiracy to possess with the intent to distribute methamphetamines; and (4) possession with the intent to distribute methamphetamines, violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. U.S. v. Rosales, Criminal No. 1:18-621-1, Dkt. No. 18 (J. Rodriguez presiding) [hereinafter CR].

On October 2, 2018, the grand jury superseded the indictment and indicted Rosales and two co-defendants: with one count of conspiracy to possess with the intent to distribute heroin; one count of possession with the intent to distribute heroin; two counts of conspiracy to possess with the intent to distribute methamphetamines; two counts of possession with the intent to distribute methamphetamines; one count of conspiracy to

possess with the intent to distribute marihuana; and one count of possession with the intent to distribute marihuana, all violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. CR Dkt. No. 63.

On February 21, 2019, Rosales pled guilty in front of a United States Magistrate Judge to possession with the intent to distribute methamphetamines, which was count four in the superseding indictment. CR Dkt. No. 105.  Rosales pled guilty without a written plea agreement with the Government. CR Dkt. No. 173.

The Court established that Rosales had never been in a mental institution or treated for a mental illness of any kind; was not under the influence of any medications or drugs that would impair his ability to understand the proceedings; was able to assist in his own defense; had discussed the charges with his attorney; and was satisfied with his attorney's representation. CR Dkt. No. 173, pp. 8-11. Rosales also informed the Court that he had not been forced to plead guilty. Id, p. 31.

Rosales also stated that he had seen and received a copy of the charges that had been filed against him. CR Dkt. No. 173, p. 15.  The Magistrate Judge also ensured that Rosales understood the maximum possible sentence that he faced.

> [The Court]: Mr. Rosales, because of the type and amount of drugs as alleged in Count 4 of this Indictment, the minimum sentence by statute is 10 years' imprisonment and there is a statutory maximum sentence of life imprisonment, a $10 million fine, or both. That is you can be sentenced to no less than 10 years and up to life in prison and also be fined the $10 million. There would also be imposed against you, sir, a $100 special assessment whether you can pay that amount or not. Mr. Rosales, do you understand the maximum sentence and fine in your case?
> [Rosales]: Yes, Your Honor.

CR Dkt. No. 173, pp. 20-21.

Rosales also stated that he understood the effect of the Sentencing Guidelines and that his attorney had helped him understand how they might apply to his case. CR Dkt. No. 173, pp. 26-27.  Rosales further stated that he understood his constitutional right to remain silent; his constitutional right to the assistance of counsel; his constitutional right to trial

by jury; his constitutional right to a presumption of innocence that the government must overcome by proving guilt beyond a reasonable doubt; and his constitutional right to cross-examine opposing witnesses and to subpoena witnesses on his behalf. Id., pp. 11-16.

Having stated that he understood all of his rights, Rosales pled guilty to possession with the intent to distribute methamphetamines. CR Dkt. No. 173, pp. 35-38.

On that same day, the Magistrate Judge issued a report and recommendation that the District Judge accept Rosales's plea of guilty. CR Dkt. No. 105.

On May 16, 2019, the District Judge adopted the report and recommendation after receiving no objections from Rosales or the Government. CR Dkt. No. 128.

### 2. Presentence Report

In the final presentence report ("PSR"), Rosales was assessed a base offense level of 38, because his relevant conduct was determined to involve 93,391.06 kilograms of marihuana. CR Dkt. No. 122, pp. 11-12.  When a defendant's relevant conduct in a drug case encompasses multiple illegal substances, those substances are converted to an equivalent weight in marihuana, which is then used to calculate the base offense level. U.S.S.G. § 1B1.1.  Rosales was given a four-level enhancement for serving as a manager/leader of the conspiracy, a two-level enhancement for using his home to distribute a controlled substance and a two level enhancement for the importation of methamphetamines from a foreign country. Id.  He was allowed a three-level reduction for acceptance of responsibility. Id.  Thus, Rosales had a total offense level of 43. Id.

Regarding his criminal history, Rosales had twelve adult criminal convictions and was assessed 6 criminal history points. CR Dkt. No. 122, pp. 13-21.  He was assessed an additional two points for being on state parole when he committed the instant offense. Id., p. 21.  Thus, he had a total criminal history score of 8, resulting in a criminal history category of IV. Id.  An offense level of 43 and criminal history category of VI, produced a sentencing guideline imprisonment range of life imprisonment.

### 3. Sentencing

Rosales objected to: (1) the relevant conduct calculation; (2) the sentencing enhancement for being a manager or leader; (3) the sentencing enhancement for using his

3

home as a distribution hub; and (4) the sentencing enhancement for importation. CR Dkt. No. 155.

On January 14, 2020, the Court held the sentencing hearing. CR Dkt. No. 171. The Court overruled Rosales's objections to the PSR. Id. Rosales's counsel asked the Court to consider a downward departure, based on Rosales's age, his health, and the fact that Rosales was a "lifelong" drug addict who needed treatment. Id., pp. 20-22. The Court rejected the request for a downward departure and sentenced Rosales to life imprisonment, and a five year term of supervised release, should he ever be released from prison. Id., p. 26.

On January 28, 2020, the Court issued its written judgment. CR Dkt. No. 167.

### 4. Direct Appeal

Rosales timely filed a notice of appeal. CR Dkt. No. 160.

Rosales's appellate counsel filed an Anders[1] brief, stating that there were no non-frivolous appealable issues. Rosales v. U.S., Case. No. 20–40036 (5th Cir. 2020); CR Dkt. No. 179. Appellate counsel also filed a motion to withdraw. Id. Rosales filed a response to the motion to withdraw, arguing that he had the following viable issues for appeal: ineffective assistance of counsel and that the enhancements to his sentence were unsupported by the record. Id.

On August 13, 2020, the Fifth Circuit granted the motion to withdraw, finding that there were "no nonfrivolous issue[s] for appellate review." CR Dkt. No. 179. The Court found that the record was not sufficiently developed as to the ineffective assistance of counsel claim, declining to consider it "without prejudice to collateral review." Id. Accordingly, the Fifth Circuit dismissed the appeal. Id.

Rosales did not file a petition for writ of certiorari with the Supreme Court. Rosales had 90 days in which to file that petition; that deadline expired on November 12, 2020.[2]

---

[1] Anders v. California, 368 U.S. 738 (1967).

[2] The deadline would have expired on November 11, 2020, but that date was a federal holiday. Accordingly, the deadline was the following business day. FED. R. APP. P. 26(a)(1)(C).

SUP. CT. R. 13.1. Thus, Rosales's conviction became final on that date. Clay v. U.S., 537 U.S. 522 (2003).

### B. Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255

On August 16, 2021, Rosales timely filed the instant § 2255 petition, requesting that the District Court vacate, set aside, or correct his sentence. Dkt. No. 1.

Rosales makes the following claims: (1) his trial counsel was ineffective for advising him to plead guilty, because had he known he would receive a life sentence, he would have taken the case to trial; (2) he should not have received the sentencing enhancement for using his home to distribute drugs; (3) he should not have received the sentencing enhancement for being a leader or organizer of the criminal conspiracy; (4) the calculation of the relevant conduct weight of the drugs was not supported by the record.[3] Id.

On August 23, 2021, the Court ordered the Government to file a response. Dkt. No. 4.

On October 21, 2021, the Government filed a response, arguing that Rosales's claims were unsupported by the record. Dkt. No. 9.

On December 2, 2021, the Court ordered Anthony Troiani, Rosales's trial counsel, to file an affidavit concerning the discussions he had with Rosales about pleading guilty. Dkt. No. 11.

On January 3, 2022, Troiani filed the affidavit, stating that he discussed with Rosales the possibility that he would receive a life sentence. Dkt. No. 16. According to Troiani, he believed that the best way to reduce the possibility of a life sentence, given the evidence against Rosales, was for Rosales to plead guilty, receive acceptance of responsibility and to cooperate with the Government in hopes of receiving a sentencing reduction under U.S.S.G. § 5K1.1. Id. Troiani arranged on three separate occasions for Rosales to debrief with Government agents, but the agents reported that Rosales was not

---

[3] The Court notes that Rosales did not raise his objection to the importation enhancement in his § 2255 petition.

forthcoming with all of the information that they were seeking. Id. As a result, the Government did not agree to file a § 5K1.1 motion, increasing Rosales's chances of receiving a life sentence. Id.

On January 4, 2022, the Court noted that an evidentiary hearing was necessary to resolve the ineffective assistance of counsel claim. Dkt. No. 17. The Court appointed counsel for Rosales and set the matter for an evidentiary hearing. Id.

On May 17, 2022, the Court held the evidentiary hearing. Dkt. No. 28. Troiani testified that given the strong weight of evidence against Rosales – two co-conspirators were ready to testify against him – he felt Rosales's best chance of avoiding a life sentence was to cooperate with the Government. Dkt. No. 28, pp. 8-9. Troiani stated that "the hope was that if [Rosales] were to plead [guilty] and to cooperate, we could salvage something given the circumstances. I didn't think that it was a good situation by any means and my hope was that he would participate and that he would do what many other people have availed themselves of, which is obtain a downward departure." Id., p. 28. Troiani testified that his initial calculation of Rosales's sentencing exposure was 360 months to life. Id., p. 27.

Troiani said that the government agents told him that Rosales "was not providing the information that they wanted" concerning his drug distribution system. Id., p. 9. Troiani stated that, while Rosales did provide the Government with information about some fellow inmates planning a prison escape, "the AUSA handling the case did not seem interested in assisting Mr. Rosales at that point." Id.

Rosales testified that Troiani had told him that his expected sentencing range was 140 to 188 months. Dkt. No. 28, p. 47. Rosales denied that Troiani ever told him he was looking at 360 months to life. Id., p. 48. Rosales testified that he would have never pled guilty if he knew the Sentencing Guidelines would recommend a life sentence. Id., p. 53.

At the conclusion of the hearing, the Court gave both parties an opportunity to file post-hearing briefs. Dkt. Nos. 34, 37.

## II. Applicable Law

### A. Section 2255

Rosales seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1. As relevant here, that section provides:

(a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Where a § 2255 petitioner exhausts or waives his direct appeal, courts may presume that he was fairly convicted. U.S. v. Willis, 273 F.3d 592, 595 (5th Cir. 2001). Generally, a petitioner may not raise on collateral attack issues that he failed to raise on direct appeal, absent a showing of cause and prejudice. Id.

"In a habeas action, federal courts stand willing to review issues of jurisdiction, allegations of substantial constitutional violations, and claims that exceptional circumstances resulted in a fundamental miscarriage of justice." Lawrence v. McCarthy, 344 F.3d 467, 474 (5th Cir. 2003).

**B. Ineffective Assistance of Counsel**

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004). To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and (2) that the deficient performance prejudiced the defendant. Grammas, 376 F.3d at 436.

To prove that counsel's performance was deficient, petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012). Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

The petitioner "has the burden to prove ineffectiveness by a preponderance of the evidence." Montoya v. Johnson, 226 F.3d 399, 408 (5th Cir. 2000).

7

### C. Law of the Case

"[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." U.S. v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986) (citing U.S. v. Jones, 614 F.2d 80, 82 (5th Cir. 1980)); U.S. v. Rocha, 109 F.3d 225, 229 (5th Cir. 1997). Any decision made by the Fifth Circuit on direct appeal constitutes the "law of the case" for purposes of the § 2255 action. U.S. v. Goudeau, 512 Fed. App'x. 390, 393 (5th Cir. 2013) (unpubl.) (U.S. v. Troutman, 16 F.3d 1215 (5th Cir. 1994)).

"Under the law of the case doctrine, an issue of fact or law decided on appeal may not be re-examined either by the district court on remand or by the appellate court on a subsequent appeal." U.S. v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002) (internal quotation marks omitted). The limitation imposed by the law of the case doctrine is not jurisdictional, but discretionary. Id. "The law of the case doctrine generally instructs that a prior decision of [the appellate] court will be followed without re-examination ... unless (I) the evidence at a subsequent trial is substantially different; (ii) controlling authority has since made a contrary decision of the law applicable to such issues; or (iii) the decision was clearly erroneous and would work a manifest injustice." U.S. v. Bonilla–Mungia, 200 Fed. App'x. 376 (5th Cir. 2006) (unpubl.) (quoting U.S. v. Becerra, 155 F.3d 740, 752–53 (5th Cir. 1998)).

## III. Analysis

As previously noted, Rosales has raised several issues, which the Court restates as two overarching issues: (1) Troiani was ineffective for advising him to plead guilty; (2) the Court incorrectly applied enhancements to his sentence. Dkt. Nos. 1, 2. As discussed further below, neither of these contentions are meritorious.

### A. Guilty Plea

Rosales claims that Troiani was ineffective for advising him to plead guilty. The Court finds that this argument is not supported by the record.

"One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty." U.S. v. Herrera, 412 F.3d

8

577, 580 (5th Cir. 2005). This requires counsel to apprise the defendant of his sentencing exposure, so the defendant can "make an intelligent choice" about whether to plead guilty or go to trial. Id.

At the evidentiary hearing, Troiani testified that he appraised Rosales that he faced a likely sentencing exposure of 360 months to life. Dkt. No. 28, p. 27. Rosales, on the other hand, testified that Troiani advised him that his likely sentence was 140 to 188 months. Id., p. 48. After hearing from both men, the Court finds Troiani's testimony to be more credible.

Given the drug weight that was assessed to Rosales as well as his prior criminal history, it would be clear to any experienced criminal defense attorney that Rosales likely faced a harsh sentence. Troiani estimated that he has represented over 1,000 criminal defendants in federal court. Dkt. No. 28, p. 14. He testified that he was very familiar with the mechanics of the Sentencing Guidelines. Id. The Court finds Troiani's testimony credible that he advised Rosales that he was likely facing a sentence of 360 months to life. See U.S. v. Giacomel, 153 F.3d 257, 258 (5th Cir. 1998) (magistrate judge may make credibility determinations, after holding an evidentiary hearing, in determining whether habeas petitioner is entitled to relief).[4]

Troiani's estimated sentencing range was accurate enough for Rosales to make an informed decision about whether or not to plead guilty. This is not a case where the attorney made a major error that caused Rosales to be unable to accurately assess his options. See Herrera, 412 F.3d at 580-81 (claim that the attorney informed the defendant that he faced a maximum sentence of 51 months, causing him to reject a plea offer, only to be sentenced to 78 months was a colorable claim of deficient performance).

---

[4] Furthermore, even if the Court found Troiani and Rosales to be equally credible, Rosales's petition still fails. Rosales must demonstrate by a preponderance of the evidence that Troiani misadvised him about choosing to plead guilty. If the accounts are equally credible, then Rosales has failed to meet his burden. See Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 137 n. 9 (1997) (under the preponderance standard, "when the evidence is equally balanced," the party who has the burden of persuasion "must lose.").

Moreover, Rosales testified at his re-arraignment that he knew he faced a maximum sentence of life imprisonment and that Troiani had appraised him of that fact. CR Dkt. No. 173, pp. 20-21.  In fact, when the Magistrate Judge mentioned the possible life sentence, Rosales did not object or otherwise make clear that this information was unknown to him. The fact that Rosales "neither refused to enter his plea nor voiced any objection when confronted with this information precludes him from arguing that he pled guilty in reliance upon some alternative characterization of his exposure given to him by his counsel." U.S. v. Bjorkman, 270 F.3d 482, 503 (7th Cir. 2001).  The fact that Rosales waited until after he was sentenced to make this complaint seems to reflect buyer's remorse, rather than ineffective assistance of counsel.  Buyer's remorse is not a basis for ineffective assistance of counsel. Carranza v. U.S., 2015 WL 3952287, at *2 (W.D. Tex. June 29, 2015).

Rosales argues that Troiani's strategy – which was to have Rosales debrief with the Government to earn a downward departure under § 5K.1.1 – was ineffective because it would be meaningless.  Rosales argues that even if the Government recommended that Rosales be given a downward departure of 1/3rd off his sentence, that would not have benefitted him because 1/3rd of a life sentence is still a life sentence. Dkt. No. 34, p. 6.

This argument misstates the nature of § 5K.1.1.  That provision merely permits the Court to depart from the Guideline sentencing range if the Government files a motion "stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K.1.1.  Rosales cites no caselaw for the proposition that a defendant, whose sentencing score reflects a life sentence, cannot benefit from a § 5K1.1 motion.  This is because the caselaw indicates the exact opposite.  Several defendants, whose sentencing score reflected a life sentence, received lesser sentences after the Government filed a § 5K1.1 motion. See Lane v. U.S., 2021 WL 39583, at *2 (N.D. Tex. Jan. 5, 2021) (received a 280 month sentence); U.S. v. Cavazos-Reyes, 435 F. App'x 402, 403 (5th Cir. 2011) (received a 240 month sentence); U.S. v. Cedillo-Narvaez, 551 F. App'x 235 (5th Cir. 2014) (received a 180 month sentence).

Given the strong evidence against Rosales and the high likelihood of a harsh sentence, Troiani informed Rosales that his best strategy to avoid a long prison sentence

was to plead guilty and cooperate with the Government. This advice was well-within the "wide range of professionally competent assistance." Buck v. Davis, — U.S. —, 137 S. Ct. 759, 775 (2017). It would appear that this approach was unsuccessful, not because it was bad advice, but instead the strategy did not work because Rosales did not provide the Government with enough truthful assistance to merit the § 5K1.1 motion. Indeed, the fact that the strategy did not work – largely because of Rosales's own decision – is not proof of ineffective assistance. Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.")

This claim should be denied.

**B. Sentencing Calculation**

Rosales attacks how his Guideline sentence was calculated, including the relevant conduct; the enhancements for the use of his home; and being a leader/organizer. None of these claims are cognizable on collateral attack.

As previously noted, on direct appeal, Rosales's counsel filed an Anders brief, asserting that there were no non-frivolous grounds for relief. CR Dkt. No. 179. In response to that motion, Rosales filed a brief with the Court, largely raising the same issues that he raises in the instant proceeding.

The Fifth Circuit explicitly stated that it reviewed Rosales's brief in deciding his appeal. CR Dkt. No. 179 ("We have reviewed counsel's brief and the relevant portions of the record reflected therein, as well as Rosales's response."). The Fifth Circuit ruled that "the appeal presents no nonfrivolous issue for appellate review." Id. By necessary implication, the Fifth Circuit found that the issues raised in Rosales's brief were meritless.[5]

Because those issues were decided on direct appeal, the Court cannot consider them in these proceedings. Kalish, 780 F.2d at 508. As previously noted, the Court may only review those issues if (1) there is a subsequent trial with substantially different evidence; (2) the controlling law has changed; or (3) the decision was clearly wrong and created a manifest injustice. Becerra, 155 F.3d at 752–53. Rosales has not shown that any of these

---

[5] Because the Fifth Circuit expressly declined to rule on the ineffective assistance of counsel claim, it was not precluded by the law of the case.

factors are applicable to this case. Moreover, the record establishes that none of them are applicable.

Given the inapplicability of the exceptions, this Court is bound to apply the Fifth Circuit's decision that there were no sentencing errors. Becerra, 155 F.3d at 753 ("If the circumstances after remand do not fall into one of the exceptions...then the district court is constrained to follow the mandate issued by the appellate court.") (quoting Litman v. Massachusetts Mut. Life Ins. Co., 825 F.2d 1506, 1516 (11th Cir. 1987)). As such, these claims must be dismissed.

Furthermore, even if these issues had not been decided on direct appeal, they would still fail because they are not cognizable on collateral attack. All of these claims have to do with how his Guideline sentence was calculated/enhanced. A claim which involves a technical application of the guidelines is not cognizable in a § 2255 petition. U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

In fact, actions that amount to a technical application of the guidelines are defined by the case law. See, e.g., Vaughn, 955 F.2d at 368; U.S. v. Williamson, 183 F.3d 458, 461 (5th Cir. 1999) (issue of whether career offender sentencing enhancement properly applied was a technical application of the Guidelines); U.S. v. Rodriguez-Castro, 814 F. App'x 835, 838 (5th Cir. 2020) (same); U.S. v. Smith, 170 F.3d 184 (5th Cir. 1999) (relevant conduct finding regarding drug weight was a technical application of the Guidelines); U.S. v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998) (error in calculating sentence was a technical application of the Guidelines); U.S. v. McKay, 30 F.3d 1491 (5th Cir. 1994) (enhancement for serving as a leader or organizer is a technical application).

According to this case law, all of Rosales's claims involve a technical application of the Guidelines and are not cognizable on collateral attack. Accordingly, these claims should be denied.

**IV. Recommendation**

It is recommended that the Petitioner Roberto Rosales Jr.'s Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be denied as meritless.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006).

A district court may sua sponte rule on a COA, because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Rosales's § 2255 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Rosales's § 2255 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is recommended that a COA should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings

on appeal, except on the grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

      DONE at Brownsville, Texas on August 16, 2022.

                                                  _____
                                                  Ronald G. Morgan
                                                  United States Magistrate Judge